UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JESSIE BUTLER-JONES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CAUSE NO.: 1:17-CV-140-TLS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| ACTING COMMISSIONER OF THE | ) |
| SOCIAL SECURITY | ) |
| ADMINISTRATION, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

The Plaintiff, Jessie Butler-Jones, seeks review of the final decision of the Acting Commissioner of the Social Security Administration (Commissioner) denying her application for disability insurance benefits and for supplemental security income. The Plaintiff argues that the Commissioner wrongfully denied her disability benefits and supplemental security income because the Administrative Law Judge (ALJ) assigned to her case made two determinations that are not supported by substantial evidence. First, the Plaintiff contends that the ALJ's mental health analysis is not supported by substantial evidence. Second, the Plaintiff asserts that the ALJ's credibility determination is not supported by substantial evidence. For the reasons that follow, the Court will remand the case for further proceedings.

**BACKGROUND**

On September 13, 2013, the Plaintiff filed a Title II application for a period of disability and disability insurance benefits, as well as a Title XVI application for supplemental security income, alleging disability beginning July 31, 2008. (R. 17.) Her claims were denied initially on

December 13, 2013, and upon reconsideration on February 25, 2014. (*Id.*) On July 7, 2015, the Plaintiff appeared with counsel and testified at a hearing held before an Administrative Law Judge (ALJ). (*Id.*) Sharon D. Ringenberg, a vocational expert (VE), also appeared and testified at the hearing. (*Id.*) On September 22, 2015, the ALJ denied the Plaintiff's application, finding she was not disabled prior to her date last insured, December 31, 2016. (R. 17–33.) On February 14, 2017, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied the Plaintiff's request for review of the ALJ's decision. (R. 2–6.) On April 7, 2017, the Plaintiff filed this claim [ECF No. 1] in federal court against the Acting Commissioner of the Social Security Administration.

**THE ALJ'S FINDINGS**

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy considering her age, education, and work experience. §§ 423(d)(2)(A), 1382c(a)(3)(B).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits. 20 C.F.R. §§ 404.1520, 416.920. The first step is to determine whether the claimant no longer engages in substantial gainful activity (SGA). *Id.* In the case at hand, the ALJ found that the Plaintiff has been unable to engage in SGA from her alleged onset date, July 31, 2008, to her date last insured, December 31, 2016. (R. 19.)

In step two, the ALJ determines whether the claimant has a severe impairment limiting her ability to do basic work activities under §§ 404.1520(c), 416.920(c). In this case, the ALJ determined that the Plaintiff had multiple severe impairments, including mild lumbar degenerative disc disease and mild lumbar facet disease with radiculitis and prior diagnosis of somatic dysfunction of the sacral region; mild degenerative changes in the right knee with a past diagnosis of patellofemoral syndrome and arthritic changes in the right ankle; moderate pulmonary obstruction; hypertension; obesity; moderate atherosclerosis without critical disease and with normal left ventricular systolic function; diabetes mellitus; more recent diagnosis of trochanteric bursitis following a fall in January 2015; and more recent diagnoses of post-traumatic stress disorder (PTSD) and schizoaffective disorder. (R. 19–20.) The ALJ found that these impairments caused more than minimal limitations in the Plaintiff's ability to perform the basic mental and physical demands of work and had lasted for at least twelve months as required under the statute. (*Id.*) The ALJ also found that the Plaintiff suffered from gastroesophageal reflux disease (GERD) and hyperlipidemia, but determined that these conditions were non-severe. (R. 20.) These conditions were generally controlled with routinely prescribed medication and the evidence did not establish significant functional limitations lasting twelve months in duration as required under the statute. (*Id.*)

Step three requires the ALJ to "consider the medical severity of [the] impairment" to determine whether the impairment "meets or equals one of the [the] listings in appendix 1 . . . ." §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant's impairment(s), considered singly or in combination with other impairments, rise to this level, there is a presumption of disability "without considering [the claimant's] age, education, and work experience." §§ 404.1520(d), 416.920(d). But, if the impairment(s), either singly or in combination, fall short, the ALJ must

proceed to step four and examine the claimant's "residual functional capacity" (RFC)—the types of things she can still do, despite her limitations—to determine whether she can perform "past relevant work," (§§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv)), or whether the claimant can "make an adjustment to other work" given the claimant's "age, education, and work experience." (§§ 404.1520(a)(4)(v), 416.920(a)(4)(v)).

The ALJ determined that the Plaintiff's impairments did not meet or equal any of the listings in Appendix 1, and that she had the RFC to perform a limited range of sedentary work in that:

> [T]he claimant can [sic] six hours in an eight hour work day and stand and/or walk two hours in an eight hour work day. The claimant can lift, carry, push, and pull 10 pounds occasionally and 10 pounds frequently. The claimant can occasionally kneel, crouch, crawl, balance and squat. The claimant has no deficits in reaching or fine and gross manipulation[.] The claimant can occasionally climb ramps and stairs 1 to 2 flights with rails. The claimant can frequently bend and stoop in addition to what is required to sit. The claimant should not perform work requiring concentrated exposure to extreme and excessive amounts of fumes, dusts, gases as well as excessive heat, cold and humidity[.] The claimant should not work within close proximity to hazards of open heights and open/dangerous machinery. The claimant requires a cane for prolonged ambulation and when upon uneven surfaces. The claimant is limited to superficial interaction with coworkers, supervisors and the public, with superficial interaction defined as occasional and casual contact not involving prolonged conversation. Contact with supervisors still involves necessary instruction. The claimant is limited to work that involves only simple, routine and repetitive tasks that can be learned through short demonstration up to thirty days. The claimant can maintain the concentration required to perform simple tasks. The claimant can remember simple work-like procedures. The claimant can make simple work-related decisions. The claimant is limited to work within a low stress job defined as requiring only occasional decision making and only occasional changes in the work setting. The claimant can tolerate predictable changes in the work environment. The claimant can meet production requirements in an environment that allows him/her to sustain a flexible and goal oriented pace. The claimant is limited from fast-paced work such as assembly line production work with rigid or strict productivity requirements. The claimant is not limited from work requiring the ability to read simple things such as lists and mailing labels and using basic mathematics in the form of single digit addition.

(R. 22.)

After analyzing the record, the ALJ concluded that the Plaintiff was not disabled from her alleged onset date through the date of the ALJ's decision (September 22, 2015). (R. 32.) The ALJ found that the Plaintiff's allegations concerning the intensity, persistence, and limiting effects of her combined symptoms were credible only in so far as they were consistent with the RFC. (R. 23.)

For example, regarding her physical capabilities, the ALJ noted that the Plaintiff presented that she needed to use a cane to stand nearly doubled over with her elbows on the table at her hearing. (*Id.*) She reported experiencing arthritis pain in her spine, right knee, and in multiple other areas. (*Id.*) She further testified that she has used a cane since March 2015, because she has fallen three times, and that she experiences pain in her ankle from a sprain in January 2015, and general pain in her right hip (*Id.*) The Plaintiff testified that she takes Gabapentin and Flexeril for constant pain, which reduces but not does eliminate the pain. (*Id.*) She was also previously treated with injections in the back and hip, but these would relieve pain for only five or six days. (*Id.*) She sought treatment from a pain specialist for her back and knee. (*Id.*) The Plaintiff also detailed her breathing problems due to asthma, which she treated with an inhaler and nebulizer. (*Id.*) She also testified that she last worked in May 2013, and at that time she worked full-time doing cleaning work at Hampton Inn. (*Id.*) She testified that she could no longer perform certain tasks in this position, such as lifting trash or cleaning carpets, and as such, her employer reduced her hours to three days per week before ultimately firing her. (*Id.*)

Regarding her mental capabilities and limitations, the Plaintiff testified that she completed the eighth grade and did not receive special education services. (*Id.*) She struggles with reading, writing, and math calculations. (*Id.*) She also testified that she has been hearing voices since she was fourteen years old, and began seeking treatment for this, in the form of

medication and counseling at Park Center, about a year and a half before the ALJ's decision date. (*Id.*) She also testified to anger problems, crying, and medication side effects including slurred speech and passing out. (*Id.*) Michael Chapman, a friend of the Plaintiff, also testified at the hearing. He indicated that the Plaintiff suffered seven to ten schizophrenia episodes per week. (*Id.*) He also testified that the Plaintiff needed to use a cane daily, that she had memory issues, and that in his opinion the Plaintiff could not perform and retain simple tasks, such as stuffing an envelope, because she could not keep up with the pace. (*Id.*) The ALJ later found these witness statements to be an extension of the Plaintiff's own allegations. (R. 30.)

The ALJ also examined the Plaintiff's mental health records. The Plaintiff was diagnosed with major depressive disorder and generalized anxiety disorder at a December 2013 psychological consultative examination by Dr. Alan Stage. (R. 28; R. 431–36.) The ALJ provided little weight to Dr. Stage's GAF score of 45, at least in part because the Commissioner has declined to endorse the GAF scale for use in Social Security and SSI disability programs. (R. 29.) The ALJ stated that the low GAF score assessment was "inconsistent with the clinical findings by Dr. Stage and the remainder of the medical treatment record demonstrating few psychological issues . . . and as noted above [in the ALJ's opinion]." (*Id.*)

The ALJ also examined the Plaintiff's mental health treatment at Park Center. (R. 29.) The Plaintiff was diagnosed with PTSD and schizoaffective disorder during an examination at Park Center in July 2014. (*Id.*) The Plaintiff received treatment from Park Center on several occasions over the next year, including November and December of 2014 (she did miss an appointment in September of that year). (*Id.*) Throughout that time the ALJ highlighted that treatment notes from this period reflected that the Plaintiff had "a pleasant attitude, appropriate appearance, coherent thoughts, normal perception, no memory problems, and normal thought

content, but [that] she was depressed with a flat affect." (*Id.*) She denied any side effects from medication and her treating sources described her as stable. (*Id.*) During a walk-in treatment session on December 29, 2014, she reported her current medications were good, no changes were needed, and she had no complaints with her medications. (*Id.*) The ALJ thought it important to note that the Plaintiff did not return for psychotropic medications until May 2015, when she alleged hallucinations and poor sleep, and that her "erratic" medication compliance was "significant" in his decision making process. (R. 30; R. 754.) The ALJ also noted that "the subjective reports [made by the Plaintiff] to Park Center staff must be considered in light of the overall lack of mental health treatment documented prior to July 2014 and the often normal psychological findings in other treatment notes." (R. 24.)

The ALJ found that the Plaintiff was unable to perform any past relevant work as a cashier, babysitter, housekeeper cleaner, or a laundry worker. However, relying on the vocational expert's testimony, the ALJ found that "considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (R. 31) Thus, the ALJ found that the Plaintiff was not disabled as defined in the Social Security Act since her alleged onset date. (R. 32.)

**STANDARD OF REVIEW**

The decision of the ALJ is the final decision of the Commissioner when the Appeals Council denies a request for review. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Social Security Act establishes that the Commissioner's findings as to any fact are conclusive if supported by substantial evidence. *See Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995). Thus,

the Court will affirm the Commissioner's finding of fact and denial of disability benefits if substantial evidence supports them. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2009). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Richardson*, 402 U.S. at 399–400. The reviewing court examines the entire record; however it does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *See Diaz*, 55 F.3d at 305–06. The Court will "conduct a critical review of the evidence," considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision, and "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (internal quotations omitted).

When an ALJ recommends the denial of benefits, the ALJ must first "provide a logical bridge between the evidence and [the ALJ's] conclusions." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009) (internal quotation marks and citation omitted). Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). However, if substantial evidence supports the ALJ's determination, the decision must be

affirmed even if "reasonable minds could differ concerning whether [the claimant] is disabled." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

The Plaintiff raises two issues on appeal. First, the Plaintiff contends that the ALJ's mental health analysis is not supported by substantial evidence. Second, the Plaintiff asserts that the ALJ's credibility determination is not supported by substantial evidence. The Court will focus its review on the ALJ's credibility determination. The ALJ delineated a very precise RFC, but if the Plaintiff's mental health limitations are not properly considered due to an adverse credibility determination, then the RFC must be reexamined.

"An ALJ is in the best position to determine the credibility of witnesses, and a credibility determination will be overturned only if it is patently wrong." *Pinder v. Astrue*, 3:09-CV-363, 2010 WL 2243248, at *4 (N.D. Ind. June 1, 2010) (citing *Craft*, 539 F.3d at 678). "Reviewing courts therefore should rarely disturb an ALJ's credibility determination, unless that finding is unreasonable or unsupported." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008). However, "a failure to adequately explain his or her credibility finding by discussing specific reasons supported by the record is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015) (citing *Terry*, 580 F.3d at 477); *see also Brindisi v. Barnhart*, 315 F.3d 783, 787–88 (7th Cir. 2003); *Salaiz v. Colvin*, 202 F. Supp. 3d 887, 893 (N.D. Ind. 2016).

If an ALJ finds that a medical impairment exists and that the medical impairment could produce the claimant's alleged condition, the ALJ must assess how the individual's symptoms affect her ability to work. SSR 96-7p.[1] It is improper to find a claimant not credible simply

---

[1] Social Security Ruling 96-7p provided an earlier framework for evaluating a claimant's symptoms in disability claims. *See* SSR 96-7p. While this ruling has been superseded by Social Security Ruling 16-3p,

9

because the claimant's subjective complaints are not fully substantiated by the record. *Barnes v. Colvin*, 80 F. Supp. 3d 881, 885 (N.D. Ill. 2015). The ALJ must review the entire record and "build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel*, 227 F.863, 872 (7th Cir. 2000). In this analysis, the ALJ should consider objective medical evidence, the claimant's daily activities, allegations of pain, any aggravating factors, the types of treatment received, the medications taken, and any functional limitations. *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). As a corollary, an ALJ may not disregard subjective allegations "solely" because the allegations are not confirmed by objective medical evidence. *Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015). As stated previously, the Court will only overturn an ALJ's credibility decision when the assessment is patently wrong. *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010).

The Government contends that the ALJ considered several pieces of evidence when determining the Plaintiff's credibility, including the objective medical evidence, Plaintiff's medicines and their effectiveness, her routine and conservative treatment history, her activities of daily living, and record medical opinions. For example, the Government acknowledged that the ALJ "point[ed] out how curious it was that" the Plaintiff testified that she injured her right hip in a fall when the record demonstrated that she injured her left hip. The Government further acknowledged that the ALJ made observations that the Plaintiff lacked any documentation from her employer to support her claim that she was fired from her previous employment for poor work performance, aggressive behavior towards peers and superiors, and severe attendance

---

see SSR 16-3p, SSR 96-7p applies only when an ALJ "make[s] determinations and decisions on or after March 28, 2016 and that Social Security Ruling 96-7p governs cases decided before that date." *Cherry v. Berryhill*, 2:16-CV-425, 2018 WL 571944, at *3 (N.D. Ind. Jan. 26, 2018) (citing Notices, Social Security Ruling 16-3p, 2017 WL 4790249 (Oct. 25, 2017)). In the instant case, the ALJ issued his decision on September 22, 2015, and therefore SSR 96-7p applies.

issues. The Government contends that these two latter portions of the decision were mere observations, and the ALJ did not use these against the Plaintiff improperly.

The Court disagrees. The ALJ noted that:

> Despite a January 2015 report of severe work problems with aggressive behaviors towards peers or superiors with severe attendance problems, (Exhibit 14F, p. 60), such a finding would appear to be based solely upon subjective complaints as these notes do not reflect documentation of severe aggression towards staff and the record does not include documentation, such as an employer's statement, confirming such aggression. There was a report of hallucinations, but again the claimant was not reported with objective medical findings of response to internal stimuli and objective medical findings did include normal perception, thought content and thought process. Thus, the finding of hallucinations would appear to be based upon subjective statements.

(R. 30.) While the Government contends that these were mere observations by the ALJ, the Court believes that the statements reflect the ALJ's hesitance to accept the Plaintiff's statements absent hard, objective evidence. The ALJ's reasoning demonstrates that he drew a negative inference from the lack of an employer note detailing the Plaintiff's erratic behavior, and drew another negative inference because her subjective statements regarding alleged hallucinations and other mental health difficulties did not conform to the ALJ's view of the record.

There are other examples where the ALJ made negative inferences based on a lack of objective evidence. For example, the ALJ noted that "the subjective reports to Park Center staff must be considered in light of the overall lack of mental health treatment documented prior to July 2014 . . . ." (R. 24.) In the same paragraph, the ALJ also noted that the Plaintiff exhibited erratic compliance with treatment and misuse or inconsistent use of treatment. (*Id.*) The ALJ never examined, though, whether mental illness played a role in the Plaintiff's inconsistent treatment, noncompliance with treatment, or a lack of treatment. *Kangail v. Barnhart*, 454 F.3d 627, 630 (7th Cir. 2006); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009) ("For some mental disorders, the very failure to seek treatment is simply another symptom

11

of the disorder itself.") If mental health issues played a role in the lack of treatment, inconsistent treatment, or erratic compliance with treatment, then an adverse credibility decision based on these expressions of poor mental health is improper.

The Court further notes that there are other aspects of the ALJ's decision which may warrant closer examination. For example, the Government contends that the ALJ examined the Plaintiff's activities of daily living. (Def. Mem. 11.) In his decision, however, the ALJ very briefly discusses the Plaintiff's activities of daily living. (R. 21.) For example, the ALJ notes that, according to the Function Reports submitted by both the Plaintiff and her third party witness in 2013, the Plaintiff drives. (*Id.*) However, the Plaintiff claimed to no longer drive at the time of her Oral Hearing. (R. 47–48.) The ALJ also noted that the Plaintiff cleaned two to three times a week and shopped in stores. (R. 21). However, the Plaintiff's third party witness, Michael Chapman, explained at the Oral Hearing that the Plaintiff no longer helped prepare meals, no longer dusted the house (and, the Court presumes from this, no longer cleaned), and that she only shopped for groceries with the help of a motorized cart. (R. 73.) The ALJ did not address these differences between the facts presented in the Oral Hearing and the facts presented in the Function Reports written in November 2013. Though the ALJ is not required to address every piece of evidence or testimony presented, "as with any well-reasoned decision, the ALJ must rest its denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger*, 516 F.3d at 544. The ALJ did not address this contrary evidence.

The Court notes that the ALJ delineated a very precise RFC in an attempt to accommodate the Plaintiff's several physical and mental health limitations. However, the Plaintiff testified and provided evidence that her mental health may limit her ability to work with

others, or even attend work, under certain circumstances. Much of this evidence is based on the Plaintiff's subjective statements regarding her mental health. That tends to be the nature of mental health evaluations. Any credibility decision, therefore, directly impacts the RFC and, ultimately, whether the Plaintiff is disabled within the statutory scheme. The ALJ should reexamine the logical bridge from the mental health evidence to his conclusions to ensure that the Plaintiff is not improperly faulted for activity that may result from the very mental illness from which she suffers.

On remand, the ALJ should ensure that any inconsistent, erratic, or prior lack of treatment on the Plaintiff's part was not due to mental illness and should revisit the issue of the Plaintiff's credibility at least to the extent it was premised on this lack of treatment. The ALJ should also consider how the remainder of his findings may be affected by the exclusion of improper inferences. Because the Court is remanding on this issue, the Court need not consider the remainder of the parties' arguments.

## CONCLUSION

Accordingly, the Court REVERSES and REMANDS this case for further proceedings in accordance with this Opinion and Order.

SO ORDERED on February 20, 2018.

      s/ Theresa L. Springmann
CHIEF JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT